# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL WEST, | ) |
|         Plaintiff, | ) |
| v. | ) Case No. 1:05-cv-01441 (RMC) |
| ALPHONSO JACKSON, Secretary for the U.S. Department of Housing & Urban Development, | ) |
|         Defendant. | ) |

## MOTION FOR JUDGMENT ON THE PLEADINGS

COMES NOW Plaintiff Michael West, *pro se*, and pursuant to Rule 12(c) of FED. R. CIV. PRO. moves the court to enter judgment in favor of plaintiff and against defendant upon the pleadings because, having answered, the defendant has admitted and confessed to the facts alleged in the petition and the facts set up in the defendant's answer in avoidance of the plaintiff's cause of action are insufficient as a matter of law to constitute a defense. A declaration, statement of genuine issues filed in opposition to defendant's statement, and response to defendant's motion to dismiss or for summary judgment is attached.

WHEREFORE, for the reasons stated herein, the plaintiff moves this court for judgment in accordance with the prayer in the petition and for such other relief as the court may deem just and proper.

Dated this 18th day of May 2006.

[signature]

Michael West, *pro se*
P.O. Box 1935
St. Charles, MO 63302
No phone

RECEIVED

MAY 2 2 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## CERTIFICATE OF SERVICE

    I certify that a true and complete copy of the foregoing was placed in the U.S. mail, first class, this 18th day of May 2006, to:

Kenneth L. Wainstein
US Attorney
555 4th Street, NW
Washington, DC 20530

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MICHAEL WEST, )
)
        Plaintiff, )
v. ) Case No. 1:05-cv-01441 (RMC)
)
ALPHONSO JACKSON, Secretary for the )
U.S. Department of Housing & Urban )
Development, )
)
)
        Defendant. )

## DECLARATION OF MICHAEL WEST

I, Michael West, hereby declare:

1. That the declarations of Defendant's Ackerman, King, Montgomery, Salamido, Williams, and Woods may be false, misleading, or untrue. For example(s):

2. Ackerman stated that her office has no record of having received ay FOIA Appeal (Ackerman, p.3).

3. However, Woods clearly declared that on September 26, 2005 that she received FOIA Appeal. (Woods, p. 2).

4. The FOIA Appeal of September 26, 2005, referenced above, was filed because the materials provided by HUD were non-responsive to my *specific* and original request of September 2, 2005. (Emphasis added).

5. The Montgomery declaration clearly provided that he received the original September 2, 2005 FOIA request and that he did not promptly forward this said request to the responsible FOIA officer in violation of HUD's very own regulation - 24 CFR § 15.104(a). (Montgomery, pp.3-4).

1

6. Ackerman claims that "if the FOIA [requests are] sent to the wrong office, it is (sic) has been my experience" that such other offices forward the request to the responsible office. (Ackerman, pp.1-2). 24 CFR § 15.104(a); 24 CFR § 15.111.

7. Other federal agencies (OPM), also, as a routine business practice in response to a FOIA request that has been misdirected, regularly:

> "(1) Retrieve the records from the organization that has possession of them; or
>
> (2) Promptly forward the request to the appropriate organization."

5 CFR § 294.107 (2006).

8. As acknowledged by HUD representatives or agents, this federal agency has actual notice of and/or possesses a legible copy of the original FOIA request of September 2005. See 24 CFR § 103(a) ("You may submit a written request for copies of records in person or by mail.")

9. Significantly, there was no active HUD Investigation when I previously submitted a similar and specific request to HUD's agent, NECAC (eighteen months earlier).

10. As relevant to paragraph 9 above, NECAC neither responded nor released these materials to me.

11. HUD's 24 CFR § 15.103(1), in relevant part, provides:

> Although Federal agencies are required to process all requests for documents as Freedom of Information Act requests, whether or not specifically designated as FOIA requests, failure to clearly state that you are making a FOIA request could unduly delay the initial handling of your correspondence through HUD's FOIA processing. Id.

12. To date, Defendant and his agents have unfairly refused to release the requested FOIA materials specifically requested in Defendant's Exhibit 6, p. 23 of 30 - Email, to Montgomery from West, dated Aug. 29, 2005.

2

13. Here, the Montgomery declaration failed to emphasize the fact that part of the original FOIA request included for him to "provid[e] the information recently requested and directed to your personal attention" -- that being the materials specifically requested and identified within D's Exhibit 6.  See D's Exhibit 7, p. 26 of 30 – Email, dated "09/02/2005 09:58 AM."

14. To date, Defendant has unfairly refused to release the requested FOIA materials specifically requested in Defendant's Exhibit 7, p. 26 of 30.  See Email, to Montgomery from West, dated Sep. 2, 2005 – requesting *both* information requested as written out in D's Exhibit 6 above, and administrative appeal procedure for HUD's unethical and arbitrary practices. (Emphasis added).

15. The operative use of the term "and" is used as a conjunction.

16. To date, Defendant has not fully complied with either request.

17. The FOIA Appeal stated that the materials received were not responsive to the request under 5 USC § 552 *et seq*.

18. Upon information and belief, the Defendant attempts to take my FOIA requests out-of-context by separating D's Exhibits 6 & 7.

19. However, when these exhibits above are read together, the FOIA may be complete or readily ascertainable, or both, because the latter referenced the former.

20. The FOIA request of Sep. 2, '05 provides in relevant part that "Mr. Franklin: ... provid[e] the information recently requested and directed to your personal attention ...This request is made pursuant to the Freedom of Information Act, 5 USC 552." D's Exhibit 7, Doc 17-6, p. 26 of 30.

21. In pertinent part, a specific request was made for a "complete copy of the 'fraud' statute that you mention," which surely should not be exempted from disclosure whether part of investigation or not.  Memo in Support of D's Motion to Dismiss or For Summary Judgment, p.8.

3

22. In contrast, Section 555(b) of the APA requires the government to act within a reasonable amount of time as plaintiff's rights have been prejudiced. See West's FOIA requests and appeals prepared & filed in 2005.

23. Furthermore, the FOIA request directed to "Ms. Anita Robinson" was actually directed through her and to be delivered to "Mr. Turner Russell." See Paragraph 25, below.

24. With respect to this separate FOIA Act request and appeal, immediately above, a fair review of D's exhibits do not reflect that any reasonable attempt was ever made to contact the "Director" of "Enforcement" -- that being Mr. Russell, and not Ms. Robinson. See HUD's website, as of May 11, 2006: "Who's Who in FHEO", Office of Enforcement – Turner Russell, available at http://www.hud.gov/offices/fheo/fheodir.cfm

25. Mr. Russell stated in his prior letter that I should direct my correspondence through Ms. Robinson. See P's Exhibit A, Doc.2, p. 5 of 7 (For example, "Thank you for Turner Russells' letter of January 6, 2005.")

26. Significantly, a reasonable inference can be made and drawn from the available FOIA materials evidence and facts contained herewithin because after a short period of time after I filed the separate FOIA request of March 8, 2005 (Doc. 2, pp.5-6) and FOIA Appeal of April 16, 2005 (Doc. 2, p.7) materials with Director, Mr. Russell ... my separate underlying request for this same agency to re-open the unfairly closed investigation pertaining to NECAC's discriminatory practices *was then* granted. (Emphasis added).

27. The smoking gun: I believe there was no other correspondence submitted or received between Mr. Russell and me, after these FOIA materials above were directed to this Director of Enforcement Support Division.

4

28. Neither this FOIA request nor its respective appeal above was returned to me by the U.S. Postal Authorities as being "undeliverable."

29. After a long and exhaustive review of defendant's materials and exhibits, there was no evidence found that the defendant made a reasonable attempt to contact the Director, Mr. Russell, with respect to the received FOIA materials. After all, these materials were directed to him at his Washington D.C. office. As such, there would have been no reason for these materials to have necessarily passed through the HUD offices of Salamido, Williams, or King. See Weisberg v. United States Dep't of Justice, 227 U.S. App. D.C. 253, 705 F.2d 1344, 1351 (D.C. Cir. 1983).

30. The fact that Director, Mr. Russell received these FOIA materials is further demonstrated by the fact of Mr. Montgomery's subsequent appointment to re-open and re-investigate the enumerated discriminatory practices of its agent, NECAC. See D's Exhibit 1, Doc. 17-6, p. 6 of 30.

31. As relevant to paragraph 30 above, HUD's investigator Mraz was found filing false investigative report materials in support of closing administrative discrimination complaints in violation of HUD's own directives, 28 CFR Part 35, both components of the Due Process and Equal Protection of Law Clause as guaranteed under the Fourteenth Amendment to the United States Constitution, and the Administrative Procedure Act (APA).

32. Likewise, none of the proffered declarations filed by defendant in this instant case mention these unmistakable facts in paragraphs 18 through 31 above.

33. The acts (or omissions) of defendant above are consistent with the fact that I was never provided with a copy of any of the materials that the Defendant filed in this case, by the

5

Defendant, including but not limited to: the Answer and Defendant's Motion to Dismiss or For Summary Judgment.

34. Here, because of the facts stated in paragraph 33 above, this is why my motion for default judgment was filed in this instant civil court case.

35. Assuming arguendo that the defendant misplaced these FOIA materials, there is no credible argument left that the defendant does not now have in his possession these separate FOIA materials directed to Director of Enforcement Support Division, Mr. Turner Russell, because this U.S. District Court for Columbia served the Defendant with legal process, which, more likely than not, included a copy of the original request and the following appeal. Doc. 2, pp. 5-7. To date, the Plaintiff received nothing in response.

36. The statutory periods for HUD to respond for either FOIA requests or appeals have clearly expired.

37. After a fair review of these FOIA requests, a reasonable person could conclude that some of the materials requested pertain to HUD directives and regulations.

38. The requested administrative regulations, staff manual, and instructions within my FOIA requests are generally available to the public. 5 USC § 552(a)(1); 5 CFR § 294.106.

39. To date, the defendant unfairly continues to withhold the requested materials directed to HUD's Director or attorneys at Washington D.C. office.

40. On one hand, I believe I have "exhausted my administrative remedies" in accordance with controlling statutes 5 USC § 552 and 24 CFR Part 15 *et seq*.

41. HUD's 24 CFR § 15.104(a), in relevant part, provides:

> HUD, in general, will respond within 20 working days after the correct office receives your request. If you have sent your request to the wrong office, that *office will send it to the correct office within 10 working days* and will send you an acknowledgment letter. (Emphasis added). Id.

6

42. On the other hand, I believe Defendant *via* Ms. Woods attempts to add an additional unlegislated appeal process after she received the FOIA Appeal by directing me to also apply for and file a second appeal action. (Woods, p.3). Cf. 24 CFR § 15.112.

43. Furthermore, Woods provided a copy of the Fair Housing Act. This continues to be non-responsive to this FOIA matter especially when compared to Montgomery's withholding of materials and information that should have been made readily available when I previously requested these same materials through HUD's agent, NECAC -- a year and a half earlier.

44. Here, I believe NECAC used this same requested information and materials in support of the prior adverse agency action against me, as part of denying my housing application process several months before HUD Mraz's and Montgomery's involvement and alleged investigations.

45. Upon information and belief, declatory and injunctive relief stating that HUD's unlegislated practice, in paragraphs 42 and 43 immediately above, is unconstitutional.

46. Likewise, a Court order should issue for defendant to be enjoined and to "cease and desist" these unfair practices.

47. Similarly, HUD's investigative practice under 28 CFR Part 35 may be questionable because no conciliation attempts were ever made despite HUD's agents, NECAC, discriminatory "blue-ribbon" housing application and selection practice.

48. After a long and exhaustive review of defendant's materials and exhibits, there is no evidence that the defendant searched for "tickler" - a duplicate file containing copies of documents, which may lead to a conclusion that an inadequate search was performed. Campbell v. United States, 334 U.S. App. D.C. 20, 164 F.3d 20, 27 n.1 (1998).

49. After a long and exhaustive review of defendant's materials and exhibits, there is no evidence that the defendant made a reasonable attempt to contact "Ms. Anita Robinson", which may reasonably lead to a conclusion that an inadequate search was performed. <u>Weisberg v. United States Dep't of Justice</u>, 227 U.S. App. D.C. 253, 705 F.2d 1344, 1351 (D.C. Cir. 1983).

50. If "the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." <u>Truitt v. Dep't of State</u>, 283 U.S. App. D.C. 86, 897 F.2d 540, 542 (D.C. Cir. 1990).

*****

By my signature below, I certify that the above and foregoing is true and based on my best information and belief. Dated this 18th day of May 2006.

_____
Michael West