

U.S. Department Of Housing and Urban Development
Kansas/Missouri State Office
REGION VII
Gateway Tower II, Room 200
400 State Avenue
Kansas City, KS 66101-2406
HUD Home Page: www.hud.gov

Michael West
P O Box 1935
St. Charles, MO 63302-1935

NOV 0 9 2005

Dear Complainant:

Subject: Housing Discrimination Complaint
West v. North East Community Action Corporation, et al.
Inquiry No.: 170989
HUD Case No.: 070408728 and 070408724 and 07040872D

The U.S. Department of Housing and Urban Development (HUD) administratively enforces the Fair Housing Act of 1968 (the Act). HUD has completed its investigation of the above-referenced complaint. Efforts to voluntarily conciliate the complaint during the course of the investigation were unsuccessful.

Based on the evidence obtained during the investigation, HUD has determined that no reasonable cause exists to believe that a discriminatory housing practice has occurred. Accordingly, HUD has completed its administrative processing of this complaint under the Act, and the complaint is hereby **dismissed**. The enclosed Determination of No Reasonable Cause contains a summary of the factual evidence supporting this dismissal.

<u>Retaliation is a violation of the Fair Housing Act</u>. Section 818 of the Act makes it unlawful to retaliate against any person because he or she has filed a housing discrimination complaint; is associated with a complainant; has counseled or otherwise assisted any person to file such a complaint; or has provided information to HUD during a complaint investigation. Section 818 also protects complainants against retaliatory acts that occur after a complainant has withdrawn, settled, or conciliated a housing discrimination complaint. Section 818 protects complainants against retaliatory acts that occur after a finding of no reasonable cause. Any person who believes that he or she has been a victim of retaliation for any of the reasons listed above may file a housing discrimination complaint with HUD within one (1) year of the date on which the most recent alleged retaliatory act(s) occurred or ended.

**Right to file a civil lawsuit**. Notwithstanding HUD's dismissal of this complaint, under Section 813(a) of the Act, the complainant may file a civil lawsuit in an appropriate federal district court or state court within two (2) years of the date on which the alleged discriminatory housing practice occurred or ended. The computation of this two-year period does not include the time during which this administrative proceeding was pending with HUD. If, upon the application of either party, the court determines that the party is financially unable to bear the costs of the civil lawsuit, the court may appoint an attorney, or may authorize the commencement of or continuation of the civil lawsuit without the payment of fees, costs, or security.

**Reconsideration**. A complainant may ask HUD to reconsider its Determination of No Reasonable Cause. Requests for reconsideration must be in writing and must set forth the specific reasons why the complainant believes that the Determination of No Reasonable Cause is in error. Reconsideration requests must be limited to the allegations and issues in the complaint. The complainant must identify the relevant information that he or she believes is incorrect, or that was omitted from the complaint investigation. The request must include all new and material evidence that the complainant believes supports the reconsideration request.

Please direct all reconsideration requests to: Director, Office of Enforcement, FHEO, U.S. Department of Housing and Urban Development, Room 5226, 451-7th Street, SW, Washington, DC 20410-2000. Before requesting reconsideration, please review the Final Investigative Report. The enclosed Determination provides instructions for obtaining a copy of the Report.

**Public Disclosure**. Section 103.400(a)(2)(ii) of HUD's regulation implementing the Act requires that HUD shall publicly disclose the dismissal of this complaint, unless a complainant or a respondent requests in writing that no such disclosure shall be made. Requests for nondisclosure must be made within thirty (30) days after receipt of this Determination. Nondisclosure requests should be submitted to the same HUD Office that issued the Determination. Notwithstanding such a request, the fact of this dismissal, including the names of all parties to the complaint, is public information and is available upon request.

If you have any questions regarding this closure, please contact FRANK MONTGOMERY, Investigator, at (800) 743-5323 or 913-551-6993, for assistance.

Sincerely,

Robbie Herndon
FHEO Region VII Director
Office of Fair Housing and
Equal Opportunity

Enclosure

070408728

DETERMINATION

CASE NAME: West v. North East Community Action Corporation, et al.

CASE NUMBER: 07-04-0872-8
SECTION 504 NUMBER: 07-04-0872-4
ADA NUMBER: 07-04-0872-D

I. JURISDICTION

A complaint was filed with HUD on July 26, 2004, alleging that the Complainant was injured by a discriminatory act. It is alleged that the Respondents were responsible for discriminatory refusal to rent. It is alleged that the Respondents acts were based on disability. The most recent act is alleged to have occurred on May 15, 2004. The violation occurred at Bowling Green, MO. If proven, the allegation(s) would constitute a violation of Section 804(f) of Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act of 1988.

The Respondents receive federal funding in the form of:

Community Development Block Grant

The complainant has also alleged violations of Section 504 of the 1973 Rehabilitation Act; and the Americans with Disabilities Act of 1990 by the Respondents.

II. COMPLAINANT'S ALLEGATIONS

Section: 804(f)(2)(A)
Issue: Refusal to Rent
Basis: Handicap
Allegation: Refusal to Process Application

The Complainant alleges the Respondents discriminated against him by refusing to process his application for participation in the Section 8 Program. He alleges that in or around January 2004, he applied for the Section 8 Program and on or around March 15, 2004, the Respondents informed him that they had evidence that he had committed fraud. The Complainant alleged that he made three written requests for documentation to support their allegation that he had committed fraud, and requested information about how to file an appeal. He alleged, however, that the Respondents refused to respond to his requests and contends that the Respondents' refusals were due to his disability.

III. RESPONDENTS' DEFENSES

This correspondence is in response to your request for

Page 1 of 9

information regarding above case. I am attaching August 19, 2004 correspondence to the HUD Office of Fair Housing. This correspondence is a response to the housing discrimination complaint originally filed by Mr. Michael West. This document explains everything that occurred through August 19, 2004.

After the August 19, 2004 correspondence was sent to the HUD Office of Fair Housing, NECAC received a Determination on August 24, 2004. The Determination stated "the Office of Fair Housing had completed its investigation of the subject complaint which was filed under the Act. Based on the evidence obtained during the investigation, the Department has determined that reasonable cause does not exist to believe that a discriminatory housing practice has occurred."

Mr. Michael West continued using Nelva Owens name on documents. The Missouri Department of Revenue sent a notice to Michael West, % Nelva Owens, 16 N Court St, Bowling Green, MO and was received at the North East Community Action Corporation administrative offices. Nelva Owens has contacted the Missouri Department of Revenue to advise them to remove her name from any correspondence for Michael West.

When Mr. Michael West made a preliminary housing application at the St. Charles NECAC Service center, he failed to provide county residency documentation or provide social security documentation. These items were requested from him. His application could not be accepted without documentation that is required from each applicant. Although his application was denied because he lived with someone on Section 8 program, he failed to provide documentation, which made his application invalid.

- Michael West requested an application for Section 8 rental assistance from the NECAC St. Charles County Service Center. The application was either mailed from the NECAC St. Charles County Service Center or picked up by Michael West at the same office December 1, 2003. The application is signed by Darlene Harkins. Along with the application, Michael West received a fact sheet which stated the documentation that was required to verify residency preference along with a copy of the social security card. Michael West completed the application for Section 8 rental assistance, dated it December 29, 2003, and returned it to the NECAC St. Charles county service center.
- When the application is received at a NECAC office, it is checked for completeness. When the application is complete, it can then be sent to the NECAC Administration Office for data entry and be placed on the waiting list. Because Michael West did not provide a copy of his social security card or proof of local residency preference, the file was held in the St. Charles office attempting to receive the required documentation from Mr. West. Marion Brown, a Title V worker employed in the St. Charles office was the employee attempting to get the required documentation in order to complete the application process.
- On a December 29, 2003 letter that was attached to Michael West application for Section 8 rental assistance Michael

Page 2 of 9

- West stated, quote: "That he was presently homeless and please provide referrals, which include cash. So that I can request a social security card for your administrative purposes. Additionally, since you do not accept a drivers license as proof of residency and the fact that all utility bills and lease was under Julie (Stephen's) name, may I suggest that you take my word as a future officer of the court or contact either Julie (Stephens) at her new Old Monroe residence or Cindy LaBeau, Julie (Stephen's) past landlord."
- Michael West stated on the Section 8 rental assistance application that he resided at 46 Vanguard, O'Fallon, MO. He stated that he lived there two years with Julie Stephens - a participant in the Section 8 program.
- The application was received at the Bowling Green administrative housing offices on February 9, 2004 without the local residency preference.
- March 1, 2004, a letter was sent to Michael West advising him that his application for the housing choice voucher program had been denied. Denial of assistance was based on his admission that he resided with Julie Stephens, a Section 8 housing participant, for two years while she received federal assistance. By Mr. West's own admission he resided with Ms. Stephens and was party to fraud committed by them.
- Michael West was given the information that he could apply for an informal hearing within 15 working days from the letter dated March 1, 2004.
- Michael West did not request an informal hearing.

The above is the information regarding Michael West's application for rental assistance.

The following information is regarding other correspondence and contacts made by Michael West to NECAC officials, various county courts and officials, to HUD staff in St. Louis and Kansas City.

- Beginning on December 2, 2003, NECAC and the Department of Housing & Urban Development office in St. Louis and Kansas City began receiving email messages and U.S. Mail from Michael West regarding his conflict with Julie Stephens and Christopher Kleewein. Mr. Kleewein is Julie Stephens's brother. Michael West alleged that Ms. Stephens and Mr. Kleewein were - quote: are/were actively involved in a scheme to defraud the U.S. Government via HUD Housing/Rental Assistance Program. Michael West contacted the St. Louis HUD office saying he was a legal studies student. He requested information regarding restrictions on who can own a rental property for a tenant to rent. On January 7, 2004, Michael West was reporting to HUD officials that he resided with Julie Stephens during the time she received Section 8 rental assistance.

- During the time period December 2, 2003 and continuing through June 2004, NECAC staff received numerous mailings/HUD forwarded emails from Michael West including:

- o Numerous email conversations with HUD officials
- o Letters sent to Jack Banas, St. Charles County Prosecuting Attorney's office, January 13, 2004 - subject: "Credibility Issues of Complaining Witnesses/Court's Want of Jurisdiction"; and January 19, 2004 - subject: "Supplement to Jan. 13, 2004 letter "Credibility Issues of Complaining Witnesses/Court's Want of Jurisdiction. Both letter listed Nelva Owens, NECAC, 16 North Court Street, Bowling Green, MO as the return address.
- O The above documents prompted calls from Mr. Jack Banas to Nelva Owens, requesting the relationship between herself and Michael West, why he was using Nelva Owens as a return address.
- O A January 23, 2004 letter from the Family Court of St. Charles County mailed to Michael West, % Nelva Owens, 16 North Court Street, Bowling Green, MO. Subject: Response to January 19 and January 13, 2004 letter - "Judges are not allowed to have a one-sided communication with a party. Generally, judges are allowed to speak to people about a case only in court, when the other side also has an opportunity to participate. Consequently, Judge Briscoe cannot respond to the letters that you sent." Ending with" please send no further correspondence directly to him, as he is not allowed to respond to such letters." Signed by JoAnn Gust, Clerk, Division 4, with a copy sent to Chris Kleewein.
- O February 2, 2004 correspondence was sent to myself regarding Michael West's relationship with Julie Stephens. Subject: "Whether NECAC's failure to provide a prompt, effective and meaningful agency investigation and enforcement program is the result of an arbitrary decision or constitutes an abuse of agency discretion."
- O March 8, 2004 correspondence sent by Michael West to Julie Stephens - returned to NECAC, as he used NECAC Administrative office address for return address. Subject - "Request for Admissions" Attached was a 15 page document titled "REQUEST FOR ADMISSIONS."
- O March 18, 2004 correspondence from Washington University Parking Services regarding parking fines and addressed to: West Michael and Nelva Owens, 16 N. Court Street, Bowling Green, MO.
- O March 23, 2004, after the advise of NECAC legal council, Nelva Owens filed a complaint with the Bowling Green post office of a possible postal law violation. Michael West has been sending letters even certified with a return address of 16 N. Court Street, Bowling Green, MO. Also, using Nelva Owens name for return mail.
- O March, 2004 a police officer from Bowling Green was attempting to deliver a subpoena to Michael West. He brought the subpoena to Nelva Owens. This was for a restraining order requested by Julie Stephens. At that time, staff was not aware which court the subpoena had been filed.
- O April 2, 2004 correspondence received from Michael West. Subject: Housing Assistance. In the letter he stated, "Requesting a hearing will not provide me with the necessary information that I need to make a well-informed decision or not to appeal." He requested that Nelva Owens send him a few postage prepaid envelopes and supporting facts and evidence.
- O April 5, 2004 correspondence from Michael West to Nelva Owens. Subject: Discriminatory practices for housing assistance. "Does

Page 4 of 9

not set forth in so many words any instruction other than "you can request a hearing", the giving of which is regarded by this applicant as erroneous". There was again reference to Michael West relationship with Julie Stephens and Mr. Kleewein.
- O May 5, 2004 correspondence form Michael West. Subject: "Ten-Day notice-Discriminatory Practices for Housing Assistance." And "requesting written responsive correspondence pertaining to the issues fairly raised within my housing assistance request."
- O May 21, 2004 email correspondence with HUD officials, Michael West stated that he had asked relevant questions pertaining to the allegations and had not received a response. The HUD officials responded that he needed to follow the instructions in the letter regarding requesting an informal hearing.
- O June 9, 2004 a St. Charles circuit court subpoena was issued to Nelva Owens to appear in St. Charles circuit court and bring documents sent to NECAC from Michael West regarding Christopher Kleewein and Julie Stephens. After discussion with the NECAC legal council, the documentation was faxed to the circuit court.
- O June 21, 2004 a subpoena was issued to the NECAC Lincoln County staff to provide agreements between Julie Stephens and NECAC to Michael West. This case was rescheduled.

My Housing staff has expended an enormous amount of time on this case. Michael West did not request an informal hearing as were the instructions of the March 1, 2004 letter denying his application for rental assistance. In no way has NECAC discriminated against Mr. West. Documentation is on file to support the above details. If you should have any questions regarding the information provided, please feel free to contact Nelva Owens, Section 8 Rent Assistance Program Director, at (573) 324-2055.

IV. FINDINGS AND CONCLUSION

The Respondents, North East Community Action Corporation (NECAC), is a not-for-profit Community Action Agency that provides a variety of social service programs to low income elderly, youth, disabled and disadvantaged individuals and families through grants and contractual agreements with Federal, state, county and local governments, other not-for-profit organizations and private businesses.

NECAC covers a 12 county service area in Missouri which includes, Lewis, Macon, Shelby, Marion, Randolph, Monroe, Ralls, Pike, Montgomery, Lincoln, Warren, and St. Charles.

The Complainant completed an application for the Section 8 Rental Assistance Program on December 29, 2003, at the Respondents St. Charles County Service Center, located at 2724 Droste Road, St. Charles, MO.

Respondents sent the Complainant a letter of denial on March 1, 2004, for participation into the Section 8 Rental Assistance program.

**Section 804(f)(2)(A): Refusal to Process Application/Disability**

Complainant Michael West stated he has lower and chronic back pain, loss use of left arm and hand, Tinitus, difficulty breathing, chest pains, frequent fist and hand cramps, and hearing loss. Complainant submitted a medical examination record from Vocational Rehabilitation but the record was insufficient to determine whether Complainant had qualified disability under the Act.

The investigation revealed that Respondents' requirements for participation in the Section 8 Rental Assistance program state that each client must complete an application for assistance, provide a social security card, proof of residency, or proof that the client/applicant works in the area. The application is then reviewed for completeness. If the application is not complete, Respondents notify the applicant and request the needed information to complete the processing of the application. Respondents require that a copy of the social security card be provided by the client and documented proof of residency at the time of application submission. In order for the client(s) to satisfy the residency requirement, a client must provide one of the following:
- Copy of current utility bill
- Copy of current lease
- Official mail from Social Security (A driver's license will not serve as proof of residency)

Respondents provided a letter dated December 29, 2003 from the Complainant, which was attached to his application for Section 8 Rental Assistance. The letter stated, "Since I am presently homeless, please immediately provide all available referrals, which include cash (so that I can request a Social Security card for your administrative process). Additionally, since you do not accept a drivers license as proof of residency and the fact that all utility bills and lease was under Julie's name, may I suggest that you take my word as a future "officer of the Court" or contact Julie at her new Old Monroe residence or Cindy La Beau (Julie's past landlord)."

The investigation revealed that Complainant failed to provide his social security card and proof of residency at the time he submitted his application.

Respondents stated that they requested the information missing, social security card and proof of residency, the from the Complainant's application for assistance, but to no avail. The fact that Complainant failed to include all of the required information delayed the processing of his application. In the interim of waiting for the requested information from the Complainant, Respondents determined that the Complainant was ineligible for Section 8 Rental Assistance because the Complainant had committed fraud by allegedly living with another participant, Julie Stephens, in the Section 8 program.

The investigation revealed that Complainant failed to provide his

social security card and proof of residency at the time he submitted his application.

The Respondents stated that on, "March 1, 2004, a letter was sent to Michael West advising him that his application for the housing choice voucher program had been denied. Denial of assistance was based on his admission that he resided with Julie Stephens, a Section 8 housing Participant, for two years while she received federal assistance. By Mr. West's own admission he resided with Ms. Stephens and was party to fraud committed by them."

The investigation revealed the denial letter Respondents sent Complainant on 3/1/04 notified Complainant he had 15 working days, from the date of the letter of denial, to request an informal hearing, in writing, on its decision to deny him participation in the Section 8 Rental Assistance program. Respondents stated Complainant failed to make a request for a hearing.

Complainant claims he requested a hearing through Respondent Nelva Owens. However, Complainant has failed to provide any written documentation to confirm that he requested an informal hearing.

Complainant stated Respondents' reason for refusing to properly and timely process his application for rental assistance was pretext for disability discrimination because Respondents unfairly refused to provide any materials or support for its reason to disqualify him from the rental assistance program.

The investigation revealed that Respondents Section 8 housing waiting list has a total of 794 persons. Of the 794 persons, 116 persons (or 15%) are disabled and 678 persons (or 85%) are non-disabled.

The investigation further revealed that Complainant was not qualified for the Respondents Section 8 Rental Assistance program because he had not provided all of the required information (social security card and proof of residency) for the Respondents to complete the processing of his application.

For the reason(s) set forth above, the Department has concluded that there is no reasonable cause to believe that the Respondents discriminated against the Complainant because of disability in violation of Section 804(f)(2)(A) of Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Act of 1988.

For the same reasons set forth above, the Department has concluded that there was no violation of Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. 794 or the Americans with Disabilities Act of 1990.

**Section 804(b): Refusal to Process Application/Sex**

The investigation revealed that Complainant was not qualified for the Respondents Section 8 Rental Assistance program because he had not provided all of the required information (social security card and proof of residency) for the Respondents to complete the processing of his application.

The investigation revealed from a review of Respondents' applications that both male and female applicants have been approved for Section 8 Rental Assistance. Respondents have also denied Section 8 Rental Assistance to both male and female applicants who have not submitted a completed application.

The investigation revealed that Respondents' Section 8 housing waiting list has a total of 794 persons. Of the 794 persons, 97 persons (or 12%) are male and 697 persons (or 88%) are female.

For the reason(s) set forth above, the Department has concluded that there is no reasonable cause to believe that the Respondents discriminated against the Complainant because of sex in violation of Section 804(b) of Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Act of 1988.

For the same reasons set forth above, the Department has concluded that there is no reasonable cause to believe that Respondents discriminated against the Complainant because of sex in violation of Title VI of the Civil Rights Act of 1964.

V.  **ADDITIONAL INFORMATION**

Notwithstanding this determination by HUD, the Fair Housing Act provides that the complainant may file a civil action in an appropriate federal district court or state court within two years after the occurrence or termination of the alleged discriminatory housing practice. The computation of this two-year period does not include the time during which this administrative proceeding was pending. In addition, upon the application of either party to such civil action, the court may appoint an attorney, or may authorize the commencement of or continuation of the civil action without the payment of fees, costs, or security, if the court determines that such party is financially unable to bear the costs of the lawsuit.

The Department's regulations implementing the Act require that a dismissal, if any, be publicly disclosed, unless the respondent requests that no such release be made. Such request must be made by the respondent within thirty (30) days of receipt of the determination to the Field Office of Fair Housing and Equal Opportunity at the address contained in the enclosed summary. Notwithstanding such request by the respondent, the fact of a dismissal, including the names of all parties, is public information and is available upon request.

A copy of the final investigative report can be obtained from:

Region VII Office of Fair Housing and Equal Opportunity
400 State Avenue Kansas City, KS 66101-2406.

Date            *[signature]*
                Bobbie Herndon
                FHEO Region VII Director
                Region VII Office of Fair Housing
                and Equal Opportunity

FINAL INVESTIGATIVE REPORT

CASE NAME:  West v. North East Community Action Corporation, et al.

CASE NUMBER:  07-04-0872-8
SECTION 504 NUMBER:  07-04-0872-8
ADA NUMBER:  07-04-0872-D

I.   JURISDICTION

   A complaint was filed with HUD on July 26, 2004, alleging that the Complainant was injured by a discriminatory act.  It is alleged that the Respondents were responsible for discriminatory refusal to rent.  It is alleged that the Respondents acts were based on handicap.  The most recent act is alleged to have occurred on May 15, 2004.  The violation occurred at Bowling Green, MO.  If proven, the allegation(s) would constitute a violation of Section 804a or f of Title VIII of the Civil Rights Act of 1968 as amended by the Fair Housing Act of 1988.

   The Respondents receive federal funding in the form of:

       Community Development Block Grant

   The Complainant has also alleged violations of Section 504 of the 1973 Rehabilitation Act; and the Americans with Disabilities Act of 1990 by the Respondents.

II.  PARTIES AND AGGRIEVED PERSONS

   A.   Complainant

       Michael West
       P O Box 1935
       St. Charles, MO  63302-1935


       Complainant's Allegations

       Section:  804(f)(2)(A)
       Issue:  Refusal to Rent
       Basis:  Handicap
       Allegation:  Refusal to Process Application

       The Complainant alleges the Respondents discriminated against him by refusing to process his application for participation in the Section 8 Program.  He alleges that in or around January 2004, he applied for the Section 8 Program and on or around March 15, 2004, the Respondents informed him that they had evidence that he had committed fraud.  The Complainant alleged that he made three written

Page 1 of 21

requests for documentation to support their allegation that he had committed fraud, and requested information about how to file an appeal. He alleged, however, that the Respondents refused to respond to his requests and contends that the Respondents' refusals were due to his disability.

B.  **Other Aggrieved Persons**

None.

C.  **Respondents**

Donald Patrick, Executive Director
North East Community Action Corporation
16 North Court Street
Bowling Green, MO 63334-0470

Nelda Owens, Housing Director
North East Community Action Corporation
16 North Court Street
Bowling Green, MO 63334-0470

**Respondents' Defenses**

This correspondence is in response to your request for information regarding above case. I am attaching August 19, 2004 correspondence to the HUD Office of Fair Housing. This correspondence is a response to the housing discrimination complaint originally filed by Mr. Michael West. This document explains everything that occurred through August 19, 2004.

After the August 19, 2004 correspondence was sent to the HUD Office of Fair Housing, NECAC received a Determination on August 24, 2004. The Determination stated "the Office of Fair Housing had completed its investigation of the subject complaint which was filed under the Act. Based on the evidence obtained during the investigation, the Department has determined that reasonable cause does not exist to believe that a discriminatory housing practice has occurred."

Mr. Michael West continued using Nelva Owens name on documents. The Missouri Department of Revenue sent a notice to Michael West, % Nelva Owens, 16 N Court St, Bowling Green, MO and was received at the North East Community Action Corporation administrative offices. Nelva Owens has contacted the Missouri Department of Revenue to advise them to remove her name from any correspondence for Michael West.

When Mr. Michael West made a preliminary housing application at the St. Charles NECAC Service center, he failed to provide county residency documentation or provide

social security documentation. These items were requested from him. His application could not be accepted without documentation that is required from each applicant. Although his application was denied because he lived with someone on Section 8 program, he failed to provide documentation, which made his application invalid.

- Michael West requested an application for Section 8 rental assistance from the NECAC St. Charles County Service Center. The application was either mailed from the NECAC St. Charles County Service Center or picked up by Michael West at the same office December 1, 2003. The application is signed by Darlene Harkins. Along with the application, Michael West received a fact sheet, which stated the documentation that was required to verify residency preference along with a copy of the social security card. Michael West completed the application for Section 8 rental assistance, dated it December 29, 2003, and returned it to the NECAC St. Charles county service center.
- When the application is received at a NECAC office, it is checked for completeness. When the application is complete, it can then be sent to the NECAC Administration Office for data entry and be placed on the waiting list. Because Michael West did not provide a copy of his social security card or proof of local residency preference, the file was held in the St. Charles office attempting to receive the required documentation from Mr. West. Marion Brown, a Title V worker employed in the St. Charles office was the employee attempting to get the required documentation in order to complete the application process.
- On a December 29, 2003 letter that was attached to Michael West application for Section 8 rental assistance Michael West stated, quote: "That he was presently homeless and please provide referrals, which include cash. So that I can request a social security card for your administrative purposes. Additionally, since you do not accept a drivers license as proof of residency and the fact that all utility bills and lease was under Julie (Stephen's) name, may I suggest that you take my word as a future officer of the court or contact either Julie (Stephens) at her new Old Monroe residence or Cindy LaBeau, Julie (Stephen's) past landlord."
- Michael West stated on the Section 8 rental assistance application that he resided at 46 Vanguard, O'Fallon, MO. He stated that he lived there two years with Julie Stephens - a participant in the Section 8 program.
- The application was received at the Bowling Green administrative housing offices on February 9, 2004 without the local residency preference.
- March 1, 2004, a letter was sent to Michael West advising him that his application for the housing

Page 3 of 21

- choice voucher program had been denied. Denial of assistance was based on his admission that he resided with Julie Stephens, a Section 8 housing participant, for two years while she received federal assistance. By Mr. West's own admission he resided with Ms. Stephens and was party to fraud committed by them.
- Michael West was given the information that he could apply for an informal hearing within 15 working days from the letter dated March 1, 2004.
- Michael West did not request an informal hearing.

The above is the information regarding Michael West's application for rental assistance.

The following information is regarding other correspondence and contacts made by Michael West to NECAC officials, various county courts and officials, to HUD staff in St. Louis and Kansas City.

- Beginning on December 2, 2003, NECAC and the Department of Housing & Urban Development office in St. Louis and Kansas City began receiving email messages and U.S. Mail from Michael West regarding his conflict with Julie Stephens and Christopher Kleewein. Mr. Kleewein is Julie Stephens brother. Michael West alleged that Ms. Stephens and Mr. Kleewein were - quote: "are/were actively involved in a scheme to defraud the U.S. Government via HUD Housing/Rental Assistance Program. Michael West contacted the St. Louis HUD office saying he was a legal studies student. He requested information regarding restrictions on who can own a rental property for a tenant to rent.
- On January 7, 2004, Michael West was reporting to HUD officials that he resided with Julie Stephens during the time she received Section 8 rental assistance.
- During the time period December 2, 2003 and continuing through June 2004, NECAC staff received numerous mailings/HUD forwarded emails from Michael West including:

  o Numerous email conversations with HUD officials
  o Letters sent to Jack Banas, St. Charles County Prosecuting Attorney's office, January 13, 2004 - subject: "Credibility Issues of Complaining Witnesses/Court's Want of Jurisdiction"; and January 19, 2004 - subject: "Supplement to Jan. 13, 2004 letter "Credibility Issues of Complaining Witnesses/Court's Want of Jurisdiction". Both letter listed Nelva Owens, NECAC, 16 North Court Street, Bowling Green, MO as the return address.
  o The above documents prompted calls from Mr. Jack Banas to Nelva Owens, requesting the relationship between herself and Michael West, why he was using Nelva Owens as a return address.
  o A January 23, 2004 letter from the Family Court of St. Charles County mailed to Michael West, % Nelva

Page 4 of 21