Owens, 16 North Court Street, Bowling Green, MO. Subject: Response to January 19 and January 13, 2004 letter – "Judges are not allowed to have a one-sided communication with a party. Generally, judges are allowed to speak to people about a case only in court, when the other side also has an opportunity to participate. Consequently, Judge Briscoe cannot respond to the letters that you sent." Ending with" please send no further correspondence directly to him, as he is not allowed to respond to such letters." Signed by JoAnn Gust, Clerk, Division 4, with a copy sent to Chris KIeewein.
- February 2, 2004 correspondence was sent to myself regarding Michael West's relationship with Julie Stephens. Subject: "Whether NECAC's failure to provide a prompt, effective and meaningful agency investigation and enforcement program is the result of an arbitrary decision or constitutes an abuse of agency discretion."
- March 8, 2004 correspondence sent by Michael West to Julie Stephens – returned to NECAC, as he used NECAC Administrative office address for return address. Subject – "Request for Admissions" Attached was a 15 page document titled "REQUEST FOR ADMISSIONS."
- March 18, 2004 correspondence from Washington University Parking Services regarding parking fines and addressed to:
West Michael and Nelva Owens, 16 N. Court Street, Bowling Green, MO.
- March 23, 2004, after the advise of NECAC legal council, Nelva Owens filed a complaint with the Bowling Green post office of a possible postal law violation. Michael West has been sending letters even certified with a return address of 16 N. Court Street, Bowling Green, MO. Also, using Nelva Owens name for return mail.
- March, 2004 a police officer from Bowling Green was attempting to deliver a subpoena to Michael West. He brought the subpoena to Nelva Owens. This was for a restraining order requested by Julie Stephens. At that time, staff was not aware which court the subpoena had been filed.
- April 2, 2004 correspondence received from Michael West. Subject: Housing Assistance. In the letter he stated, "requesting a hearing will not provide me with the necessary information that I need to make a well-informed decision or not to appeal." He requested that Nelva Owens send him a few postage prepaid envelopes and supporting facts and evidence.
- April 5, 2004 correspondence from Michael West to Nelva Owens. Subject: Discriminatory practices for housing assistance. "Does not set forth in so many words any instruction other than "you can request a hearing", the giving of which is regarded by this applicant as erroneous". There was again reference to Michael West relationship with Julie Stephens and Mr.

                    Kleewein.
- May 5, 2004 correspondence forms Michael West. Subject: "Ten-Day notice-Discriminatory Practices for Housing Assistance." And "requesting written responsive correspondence pertaining to the issues fairly raised within my housing assistance request."
- May 21, 2004 email correspondence with HUD officials, Michael West stated that he had asked relevant questions pertaining to the allegations and had not received a response. The HUD officials responded that he needed to follow the instructions in the letter regarding requesting an informal hearing.
- June 9, 2004 a St. Charles circuit court subpoena was issued to Nelva Owens to appear in St. Charles circuit court and bring documents sent to NECAC from Michael West regarding Christopher Kleewein and Julie Stephens. After discussion with the NECAC legal council, the documentation was faxed to the circuit court.
- June 21, 2004 a subpoena was issued to the NECAC Lincoln County staff to provide agreements between Julie Stephens and NECAC to Michael West. This case was rescheduled.

My Housing staff has expended an enormous amount of time on this case. Michael West did not request an informal hearing as were the instructions of the March 1, 2004 letter denying his application for rental assistance. In no way has NECAC discriminated against Mr. West. Documentation is on file to support the above details. If you should have any questions regarding the information provided, please feel free to contact Nelva Owens, Section 8 Rent Assistance Program Director, at (573) 324-2055. (Exh. D-2a)

    D.    <u>Witnesses</u>

        Karen Holmes
        North East Community Action Corporation (NECAC)
        2724 Dorste Road
        St. Charles, MO

        Julie Stephens
        O'Fallon, MO  63366

        Chris Kleewein
        7427 Pierside Drive
        O'Fallon, MO  63366

## III. CASE SUMMARY

    A.    <u>Interviews</u>

        COMPLAINANT West, Michael
        Date of Interview:  July 6, 2004

Type of Interview: Correspondence
Interviewer: KOSUTH, PAM

The complainant stated that in January 2004, he applied for participation in the Section 8 Program. He stated that in March 2004, respondent Owens sent him a letter stating that they had evidence that he had committed fraud. The complainant stated that he made three written requests to the respondents for them to provide him with written documentation that supports their accusation that he had committed fraud, and that he had requested information on information pertaining to filing a grievance. He stated that the respondents have never responded to his requests and have failed to provide a reasonable explanation to back up their claim of the allegation that he had committed fraud.

The complainant stated that his application for participation in the Section 8 Program has been pending since January 2004, and the respondents have not informed him of his standing on the waiting list.

The complainant stated he believes the respondents are discriminating against him based on his disability because non-disabled applicants received more favorable treatment from the respondents in that the respondents provided them prompt responses to their requests for information.
(Exh. D-1k)


COMPLAINANT West, Michael
Date of Interview: July 21, 2005
Type of Interview: Correspondence
Interviewer: MONTGOMERY, FRANK

Complainant was e-mailed a set of interview questions on Thursday, July 21, 2005. (Exh. D-11)


RESPONDENT Owens, Housing-Rent Assistance Director, Nelda
Date of Interview: July 21, 2005
Type of Interview: Telephonic
Interviewer: MONTGOMERY, FRANK

Respondents Donald Patrick and Nelva Owens were contacted on Thursday, July 21, 2005, regarding the response to the subject complaint. Respondent Nelva Owens agreed to prepare a response and forward to this investigator by next week.(Exh. D-2p)


COMPLAINANT West, Michael
Date of Interview: August 8, 2005
Type of Interview: Correspondence
Interviewer: MONTGOMERY, FRANK

The following is a list of interview questions for

Page 7 of 21

Complainant, Michael West. These questions are being provided in connection with the complaint of disability discrimination filed against Respondents, North East Community Action Corporation (NECAC).

Q1. What is the correct spelling of your name?

A. Michael West

Q2. What is your current address?

A. P.O. Box 1935
St. Charles, MO 63302-1935

Q3. What is your telephone number?

A. No phone

Q4. What is your e-mail address?

A. "harleyd-ok4u@yahoo.com

Q5. When did you initially make contact with the North East Community Corporation (NECAC)?

A. January 2004

Q6. What was the purpose for your initial contact with NECAC?

A. Housing assistance

Q7. When did you make application for the Section 8 Rental Assistance Program with NECAC? (If you have a copy of your application, please provide me with a copy)

A. January 2004. Necac has a copy of my application. I believe.

Q8. Please explain your understanding of the application process and criteria for the Section 8 Rental Assistance Program?

A. My understanding was that I would receive prompt service and due process for Section 8 Rental Assistance.

Q9. Did you meet the requirements for the Section 8 Rental Assistance Program?

A. Yes, I believe I met the requirements for the Section 8 Rental Assistance Program based on homelessness or physical disability or both.

Q10. Where you ever notified by NECAC of the status of

        your application for assistance? If so, who notified you and what specifically did they tell you?

A. In March 2004, Ms. Nelva Owens stated I was party to the fraud committed by Ms. Julie Stephens. To date, I am not aware that any full and fair investigation was ever conducted by NECAC for this false, misleading or untrue allegation.

Q11. Have you received any correspondence from NECAC approving or denying your application for assistance? If so, please provide a copy of the correspondence.

A. Yes, same as above.

Q12. What is your disability(s)?

A. Lower and chronic back pain, lost use of left arm and hand, Tinitus, difficulty breathing, chest pains, frequent fist and hand cramps, and hearing loss. It's documented by medical authorities.

Q13. Do you have medical documentation from SSI, Social Security Administration, doctor, or Social Worker, which confirms your disability? If so, please submit this documentation.

A. Yes, please find attached Vocational Rehabilitation documentation.

Q14. For what reasons do you believe your disability(s) is the reason for NECACs reason for refusing to process your application for rental assistance?

A. I believe NECAC's reason for refusing to properly and timely process my application for rental assistance was pretext for disability discrimination because Necac unfairly refused to provide any materials or support for its reason to disqualify me from the rental assistance program.

Q15. Do you have any other comments that you would like to make at this time?

A. I am continually prejudiced by HUD's failure to provide an adequate, effective, and meaningful administrative procedure and inability to promptly conduct an agency enforcement action against Necac and its representatives. (Exh. D-1g)

WITNESS Holmes, Karen
Date of Interview:   August 9, 2005
Type of Interview:   In-Person
Interviewer: MONTGOMERY, FRANK

On Tuesday, August 9, 2005, I conducted an interview with Respondents_ witness Karen Holmes, of North East Community Action Corp. (NECAC). The following information was obtained:

Q1.   What is the correct spelling of your name?

A.    Karen Holmes

Q2.   What is your address?

A.    2724 Droste Road
      St. Charles, MO

Q3.   What is your telephone number?

A.    (636) 723-3470

Q4.   What is your job?

A.    Field Supervisor - previous position. Current position is Housing Counselor.

Q5.   What are your job duties?

A.    To monitor the quality control processes of the completed application. Supervise the Housing Assistance Counselors.

Q6.   How long have you been employed by NECAC?

A.    10 plus years.

Q7.   What are the requirements for participation in the Section 8 Program?

A.    Investigator was provided with an application instructions form.

Q8.   What happens if an applicant fails to complete the application for the Section 8 Program or fails to provide information substantiating local preference or Social Security information?

A.    Applicant(s) is place on a list maintained by NECAC, which indicates the information that is incomplete. The applicant(s) is notified by mail that the application is incomplete and can't be processed until the incomplete information is provided. The applicant is given 10 days to provide the requested information. An application would be considered at any point.

Q9.   What were the problems with Michael West's application for the Section 8 Program?

Page 10 of 21

    A.    Mr. West's application was incomplete because he had not provided his Social Security card, proof of local residency preference - verifying address.

Q10.   Do you have any other comments you would like to make?

    A.    None. (Exh. D-2b)


WITNESS Stephens, Julie
Date of Interview:  September 8, 2005
Type of Interview:  Telephonic
Interviewer:  MONTGOMERY, FRANK

On Tuesday, September 6, 2005, I conducted a telephone interview with witness, Julie Stephens. The following information was obtained:

Q1.    What is the correct spelling of your name?

A.    Julie Stephens

Q2.    What is your current address?

A.    I don't want to provide this information.

Q3.    What is your telephone number?

A.    I don't want to provide this information.

Q4.    Do you know Michael West?

A.    Yes.

Q5.    How do you know Mr. West?

A.    I went to high school with him 20 years ago. He contacted me 2 or 3 years ago and I started dating him. I realized later that something wasn't quite right with him and that he was a mean person. I stopped dating him, but he refused to accept this decision and he continues to stalk me and harass my family.

Q6.    Did Mr. West ever live with you?

A.    Never. Michael West has never lived with me. He told the North East Community Action Corporation (NECAC) that he resided with me and they stopped my Section 8 rental assistance. I appealed NECAC's decision to terminate my assistance and they investigated the matter and found that Michael West did not live with me.

Q7.    How long did Mr. West live with you?

21

Page 11 of

A. Never.

Q8. What address did you reside at when Mr. West lived with you?

A. Not applicable.

Q9. Did you receive any type of rent subsidy at the above address?

A. Not applicable.

Q10. Who was your landlord during the time Mr. West occupied the household with you?

A. Cindy La Beau was my past landlord at 46 Vanguard Court, O'Fallon, MO 63366. However, Michael West never lived with me.

Q11. Was Mr. West aware that you received Section 8 rental assistance during the time he lived with you?

A. Yes. He knew I was a student and in the Section 8 housing program, during the time I dated him. I am afraid of him because he knows my social security number and date of birth and believe he will use my personal information in a fraudulent way. He has broken into my car and I filed a police report for it.

Michael West is the type of person that likes to file a lot of bogus motions and petitions in court.

Q12. Did Mr. West pay you rent for living with you? If so, how much?

A. He never lived with me.

Q13. Do you have any other comments that you would like to make at this time?

A. I don't want you to let Michael West know I spoke to you. I want to be an anonymous witness. He has been stalking and harassing my two daughters and I for the last two years. He has never lived or resided with me. I testified to the fact that he has never lived with me at a hearing conducted by NECAC regarding their decision to terminate my Section 8 Rental Assistance. NECAC concluded that it was not true that Michael West lived me.

I am scared of Michael West and I don't believe that he is mentally stable. I took out a restraining order and a child protection order against Michael West to keep him away from 10 year old and 12-year-old daughters and me.

> The police believe that Michael West lives in his car. I believe his car has since been impounded. (Exh. D-3g)

WITNESS Kleewein, Chris
Date of Interview: September 8, 2005
Type of Interview: Telephonic
Interviewer: MONTGOMERY, FRANK

On Thursday, September 8, 2005, I conducted a telephone interview with witness, Chris Kleewein. The following information was obtained:

Q1. What is the correct spelling of your name?

A. Chris Kleewein

Q2. What is your address?

A. 7427 Pierside Drive
O'Fallon, MO 63366

Q3. What is your telephone?

A. (home) 636-379-9380
(cell) 314-280-4023

Q4. How did you become acquainted with Michael West?

A. My sister (Julie Stephens) and I went to the same high school as Michael West. In fact we are all childhood friends. A couple of years ago, Michael West contacted my sister.

My sister and I are very close. She is a divorced mother of two and I help her out a lot with baby setting or allowing her to use my car. She hangs out a lot at my house on the weekend. In fact, she recently started going back to school. Michael West started hanging around us too. West assumed I have a lot of money and knew I owned rental property. West started acting weird stating that if I didn't let him stay in my rental property he was going to sue me. I ended up filing a restraining order against him.

Q5. Did Michael West live with your sister (Julie Stephens) for the last two years?

A. No. He has never lived with my sister.

Q6. What is your sister's current address?

A. My sister is really protective of who has her address and telephone number. I want to give it to you but I would prefer that I have her to contact you and

provide you with this information.

Q7. Do you have any other questions or comments that you would like to make at this time?

A. Yes. I work for Monsanto Company and I hold a management job in the IT department. I receive an e-mail from Michael West one day that was disturbing to me. I subsequently e-mailed Michael West and asked that he not e-mail me anymore at work. Michael West then tried to sue Monsanto stating that my request that he not e-mail me anymore harmed him.

West has falsified legal documents from the Lincoln County Public Defenders office and provided the documents to my sister. My sister gave the documents to the Prosecuting Attorney for Lincoln County, who filed charges against West for falsifying documents.

West is a very dangerous person and has a criminal record.

West once tried to sue Best Buy because they had run a sale on computer hard drives and had sold out of them. Best Buy issued West a rain check for the hard drives. Later, West wrote Best Buy a letter stating that they had caused his company to lose over $250,000 in business, because he had been unable to buy one of their hard drives. He demanded that Best Buy issue him a check for $250,000 or he would sue them.

West has no place to stay and he lives out of his car. He has a sister that lives in the area. However, she does not want anything to do with him.

West has never lived with my sister at anytime.
(Exh. D-3f)


RESPONDENT Owens, Nelva
Date of Interview:  September 12, 2005
Type of Interview:  Telephonic
Interviewer: MONTGOMERY, FRANK

On Monday, September 12, 2005, I conducted a telephone interview with Respondent Nelva Owens. The following information was obtained:

Q1. What is the correct spelling of your name?

A. Nelva Owens

Q2. What is your address?

A. 16 North Court Street
Bowling Green, MO 63334

Page 14 of

21

Q3. What is your telephone number?

A. (573) 324-2231

Q4. What is your job title?

A. Housing Director

Q5. Please provide a chronology of events leading up to the decision to deny Michael West Section 8 Rental Assistance?

A. Please see Respondents response of August 19, 2005. It provides the chronology of events.

Q6. Do you have any other comments that you would like to make at this time?

A. Yes. Michael West's application for rental assistance was denied initially because he had failed to complete his application. Specifically, Mr. West failed to provide his social security card and proof of residency. We also later learned that Mr. West committed fraud when he indicated on his application for assistance that he had resided with Julie Stephens, a participant in the Section 8 program.

Julie Stephens Section 8 Rental Assistance was terminated when Respondents learned that she was committing fraud by allowing Mr. West to live with her. Because Mr. West was not on Ms. Stephens lease and NECAC was not advised that he lived in her household we determined that fraud was being committed. A hearing was held to investigate the allegation of Mr. West living with Julie Stephens. The outcome of the hearing revealed that Mr. West never lived with Julie Stephens. The hearing was a good one and I will provide a copy of the transcript.

Michael West also called HUD at one point to report that Julie Stephens and her brother Chris Kleewein were putting together a scheme to commit fraud. Mr. West stated that Julie Stephens was going to pa house from her brother under the Section 8 program. Mr. West was therefore aware that Julie Stephens was a participant in the Respondents Section 8 program.

Mr. West was not discriminated against on the basis of his disability. It was his failure to submit a completed application for Section 8 Rental Assistance and the fact that he committed fraud by indicating that he resided with Julie Stephens. (Exh. D-2m)

B. <u>Documents</u>

21

Page 15 of

Nature of Document:  First no contact letter
Who Provided:  HUD
How transmitted to HUD:  Mail
Date of Document:  August 2, 2004
Date Obtained:

First letter requesting complainant contact investigator. (Exh. D-3a)


Nature of Document:  Second no contact letter
Who Provided:  HUD
How transmitted to HUD:  Mail
Date of Document:  August 12, 2004
Date Obtained:

Second letter requesting Complainant contact investigator. (Exh. D-3b)


Nature of Document:  Post Master Letter
Who Provided:  HUD
How transmitted to HUD:  In Person
Date of Document:  August 17, 2004
Date Obtained:

Letter to post master requesting forwarding information. (Exh. D-3c)


Nature of Document:  E-mail
Who Provided:  HUD
How transmitted to HUD:  Email
Date of Document:  August 2, 2004
Date Obtained:

Return email stating Complainant's given address was not usable.  (Exh. D-3d)


Nature of Document:  Correspondence
Who Provided:  Frank Montgomery
How transmitted to HUD:  E-Mail
Date of Document:  July 15, 2005
Date Obtained:  July 15, 2005

E-Mailed Complainant an initial contact. (Exh. D-1a)


Nature of Document:  E-mails
Who Provided:  HUD
How transmitted to HUD:  E-Mail
Date of Document:  July 18, 2005
Date Obtained:  July 18, 2005

E-mails sent to Complainant. (Exh. D-1e)


21                                              Page 16 of

Nature of Document: Correspondence
Who Provided: Frank Montgomery
How transmitted to HUD: E-Mail
Date of Document: July 21, 2005
Date Obtained: July 21, 2005

E-mailed Complainant a questionnaire and notice of rights and responsibilities. (Exh. D-1b)


Nature of Document: Certified letter
Who Provided: Frank Montgomery
How transmitted to HUD: Mail
Date of Document: July 21, 2005
Date Obtained: July 21, 2005

Contact letter to Complainant that was sent by regular and certified mail. Also included was a notice of rights and responsibilities. (Exh. D-1c)


Nature of Document: Respondents response
Who Provided: Respondents
How transmitted to HUD: Mail
Date of Document: July 25, 2005
Date Obtained: July 27, 2005

Respondents' response. (Exh. D-2a)


Nature of Document: Correspondence
Who Provided: Frank Montgomery
How transmitted to HUD: Mail
Date of Document: July 28, 2005
Date Obtained: July 28, 2005

Letter sent to Complainant by regular and certified mail outlining this investigator's attempts to gain his cooperation in this matter. (Exh. D-1d)


Nature of Document: Notice of rights
Who Provided: Frank Montgomery
How transmitted to HUD: Mail
Date of Document: August 4, 2005
Date Obtained: August 8, 2005

Complainant's signed notice of rights and responsibilities. (Exh. D-1f)


Nature of Document: Complainant's interview
Who Provided: Frank Montgomery
How transmitted to HUD: Mail
Date of Document: August 4, 2005
Date Obtained: August 8, 2005

Complainant's signed interview questionnaire. (Exh. D-1g)


Nature of Document: Medical information
Who Provided: Complainant
How transmitted to HUD: Mail
Date of Document: July 7, 2005
Date Obtained: August 8, 2005

Complainant's medical information. (Exh. D-1h)


Nature of Document: On-Site Report
Who Provided: Frank Montgomery
How transmitted to HUD: In-Person
Date of Document: August 9, 2005
Date Obtained: August 9, 2005

On August 9, 2005, the investigator completing a file review at the North East Community Action Corp (NECAC) office located at 2724 Droste Road, St. Charles, MO 63301. The file review consisted of reviewing the files of applicants for the Section 8 Program whose applications could not be processed due to the application being incomplete. Also, the files of applicants whose applications were complete for the purpose of making sure Respondents consisting applied their application procedures. The contents of the applications/file were recorded on a log.


Nature of Document: Complainant's application
Who Provided: Respondents
How transmitted to HUD: In-Person
Date of Document: December 29, 2003
Date Obtained: August 9, 2005

Complainant's application for Section 8 rental assistance with the Respondents'. (Exh. D-2c)


Nature of Document: Respondents faxed response
Who Provided: Respondents
How transmitted to HUD: Fax
Date of Document: August 9, 2005
Date Obtained: August 9, 2005

Respondents' notice sent to applicants with incomplete applications. (Exh. D-2d)


Nature of Document: Waiting list
Who Provided: Respondents
How transmitted to HUD: In-Person
Date of Document: April 28, 2005
Date Obtained: August 9, 2005

Respondents housing assistance waiting list. (Exh. D-2e)

Nature of Document: Application
Who Provided: Respondents
How transmitted to HUD: In-Person
Date of Document:
Date Obtained: August 9, 2005

Copy of Respondents application for the Section 8 Rental Assistance program. (Exh. D-2f)

Nature of Document: Application instructions
Who Provided: Respondents
How transmitted to HUD: In-Person
Date of Document:
Date Obtained: August 9, 2005

Respondents' application processing instructions. (Exh. D-2g)

Nature of Document: Log of incomplete files
Who Provided: Frank Montgomery
How transmitted to HUD: In-Person
Date of Document: August 9, 2005
Date Obtained: August 9, 2005

Log of the incomplete application files reviewed. (Exh. D-2h)

Nature of Document: Log of completed applications
Who Provided: Frank Montgomery
How transmitted to HUD: In-Person
Date of Document: August 9, 2005
Date Obtained: August 9, 2005

Log of the review from the completed application files. (Exh. D-2i)

Nature of Document: Complainant's letter
Who Provided: Respondents
How transmitted to HUD: In-Person
Date of Document: December 29, 2003
Date Obtained: August 9, 2005

Respondents' copy of a letter Complainant provided with his application for Section 8 Rental Assistance. The letter request that Respondents provided Complainant with money so that he could obtain a social security card.
(Exh. D-2j)

Nature of Document: Fact sheet
Who Provided: Respondents
How transmitted to HUD: In-Person
Date of Document:
Date Obtained: August 9, 2005

Respondents fact sheet provide to each applicant.
(Exh. D-2k)


Nature of Document: Correspondence
Who Provided: Frank Montgomery
How transmitted to HUD: Mail
Date of Document: July 28, 2005
Date Obtained: August 13, 2005

Unclaimed letter indicating efforts to contact Complainant.
(Exh. D-1j)


Nature of Document: Correspondence
Who Provided: Frank Montgomery
How transmitted to HUD: Mail
Date of Document: July 24, 2005
Date Obtained: August 24, 2005

Questionnaire sent to Complainant requesting additional information.
(Exh. D-1i)


Nature of Document: Notice of rights
Who Provided: Respondent
How transmitted to HUD: Fax
Date of Document: September 12, 2005
Date Obtained: September 13, 2005

Respondents signed notice of rights and responsibilities.
(Exh. D-2n)


Nature of Document: Respondents faxed response
Who Provided: Respondents
How transmitted to HUD: Fax
Date of Document: May 3, 2004
Date Obtained: September 13, 2005

Respondents' response of September 13, 2005. (Exh. D-2o)

    C.    <u>Interrogatories</u>

        None.


IV.    OTHER INVESTIGATIVE FINDINGS

Robbie Herndon
FHEO Region VII Director
Region VII Office of Fair Housing
and Equal Opportunity