Michael West
P.O. Box 1935
St. Charles, MO 63302

February 14, 2006

U.S. Dept. of Housing & Urban Development
Kansas City/Missouri State Office
REGION VII
Gateway Tower II, Room 200
400 State Avenue
Kansas City, KS 66101-2406


West v. North East Community Action Corporation, et. al
Inquiry No. 170989
HUD Case No.: 070408728 & 070408724 & 07040872D


Re: Material Misrepresentation and Amended Physical Disability Discrimination
Complaint under 28 CFR Part 35


Dear Enforcement & Compliance Officer:

Thank you for your findings of fact and conclusions of law, dated November 9, 2005. Upon review of the "No Reasonable Cause", this instant correspondence serves two-fold: (1) Material Misrepresentation to government officials committed by Julie Stephens & Christopher Kleewein, and (2) Amended Disability Discrimination Complaint filed against NECAC.

**MATERIAL MISREPRESENTATION**
**TO GOVERNMENT INVESTIGATORS**

First, during the interview of JULIE STEPHENS ("Stephens"), the Final Report ("Report") reflects several false, misleading, or material misrepresentations that were made to government authorities in violation of federal law. Specifically, for example, Stephens provided perjured or otherwise false evidence to government authorities by declaring:

1.  That "He contacted me 2 or 3 years ago and I started dating him..." Id., Q5, p.21

2.  That "Mr. West has never lived with me." Id., Q.6, p. 21

3.  In contrast. a few neighbors within the Van Guard Mobile Home Park would testify that "West and Stephens resided together at 46 Vanguard for over two years. For example, an immediate neighbor, Bruce (Georgia, his significant other) had signed a notarized affidavit to

1

this fact.

4.     Additionally, Todd and his father, a few doors down in this same trailer park, would testify that "West and Stephens had resided together as well."

5.     Moreover, Stephens had kicked West out of her 46 Vanguard Residence during the first part of October 2004, and allowed him to return later this same month. These facts can be reasonably verified by both Chris, the son of Mr. White, and Mr. White (the other immediate neighbor) who had been caretaker of that trailer while Chris' mother was in federal custody for selling prescription drugs to an undercover informant.

6.     Additionally, acquaintance Ken Kampmann of O'Fallon, Missouri would attest to Stephens kicking West out her 46 Vanguard Residence in October 2004.

7.     Additionally, the landlord Cindy La Beau stated in her statement made with respect to Stephens' application to the U.S. Department of Agriculture of Stephens "residing with her boyfriend." Cindy lives two blocks away from Mr. Kampmann, above, in O'Fallon, MO.

8.     Remarkably, there is no evidence that reflects HUD officials ever reasonably attempted to contact these unrelated individuals enumerated immediately above.

9.     Under these circumstances, it is not puzzling why Stephens "don't want you to let Michael West know I spoke to you."

10.    In fact, Stephens fabricated a few complaints against West. In January 2006, at least one of these fabricated complaints eventually cleared West of any wrongdoing. See Attached, Lincoln County Court Order.

11.    Remarkably, after residing with Stephens for over two years, there is no police report evidence to support her claim that "I am scared of Michael West and I don't believe he is mentally." *See* O'Fallon Municipal Police Department.

12.    More remarkable is the fact that during the alleged two years of dating proffered by Stephens, HUD or NECAC did not make a reasonable inquiry and verify as to here West was living at that time.

13.    Additionally, Stephens stated that she has two "daughters." During the two-plus years of residing with Stephens, "Who do you think watched the girls, after school…until Stephens returned from UMSL during early evening?" There was no reasonable inquiry as to this material fact by HUD or NECAC..

14.    Fair Notice and Warning - Stephens is a very deceptive individual, for several examples by:

    A. committing fraud against HUD, as discovered by NECAC;

2

   B. committing fraud against U.S.D.A. Food Stamp Program by working under-the-table for her brother and not reporting it;

   C. stealing library services from St. Charles County while residing in Lincoln County, Missouri;

   D. stealing West's automobile, clothing, and other personal belongings in January 2005. To steal West's vehicle, Stephens may have used old registration papers to deceive and unlawfully retrieve West's vehicle after it was impounded.  A complaint was filed with St. Charles County authorities (Mar. 2005);

   E. filing false police report to Lincoln County, Missouri. The "bogus motions" were found by the Lincoln County Court to be legitimate despite Stephens false report to authorities. *Supra.*

   F. during the same time Stephens stole West's automobile, knowing that West had no other transportation, filed for a restraining falsely alleging that West was seen following her two daughters school bus…some forty miles away from where West was then residing, in sub-freezing weather.

Second, during the interview of CHRISTPHER KLEEWEIN ("Kleewein"), the Final Report ("Report") reflects several false, misleading, or material misrepresentations that were made to government authorities in violation of federal law. Specifically, for example, Kleewein provided perjured or otherwise false evidence to government authorities by declaring:

1. That "My sister (Julie Stephens) and I went to the same high school as Michael West." Id. , Q4, p.13.

2. Fact, West graduated from St. Charles High School (located in St. Charles City), and both Stephens and Kleewein graduated from Francis Howell High School (located by Augusta Busch Wildlife Recreational Area in St. Charles County). Approximate distance between these two high schools is about 21 miles.

3. That as demonstrated above, "He has never lived with my sister" was false and used to deceive federal authorities during investigation in violation of federal law. Id., Q5, p. 13

4. Fact, West and Stephens would baby sit Kleewein's infant, Aidan, on various occasions during the two plus years that West resided with Stephens.

5. That "West has falsified legal documents from the Lincoln County Public Defenders office and provided the documents to my sisters.

6. Remarkably, neither HUD nor NECAC obtained any evidence to support this false, misleading, or untrue claim immediately above. As demonstrated above, West was cleared of this false charge filed by Stephens. *Supra.*

7. That "West is a very dangerous person…" There was no evidence adduced by HUD or NECAC to support this absurd, false proposition, and more likely than not, because it was fabricated by Kleewein. Id., Q7, p.14.

3

8.      That "West once tried to sue Best Buy ... and that they had caused his company to lose over $250,000 in business." Id. Q7, p. 14.

9.      Fact, West never sued or attempted to sue Best Buy for this fabricated and false claim of Kleewein.

10.     That "Michael West ...tried to sue Monsanto stating that my request that he not e-mail me anymore harmed him."

11.     Fact, upon careful review of the Report, again, there was no evidence adduced by HUD or NECAC during its investigation to support this claim. Similarly stated, Kleewein's claim is false, misleading, and untrue. There is no evidence that West ever tried to sue Monsanto under these circumstances.

12.     After Stephens and Kleewein were alerted that West would not falsify his past two-plus years of residence with Stephens on his housing application, both Kleewein and Stephens went out on a smear campaign, as may be testified to by Kampmann's neighbor, a St. Louis County Police Officer and his wife. Kleewein went to the officer's door, unknowing that he was a law enforcement officer and was greeted by his wife. She later told Chapman that Kleewein had made up a "wanted" poster and told Chapman that West was dangerous and just broke out of a mental asylum.

13.     Just as incredible is the fact that HUD or NECAC may have been alerted to the attempted HUD scam committed by both Stephens and Kleewein. Here, Kleewein went to such measures as setting up a fake business and bought a property, in which he was going to collect a check from the Section 8 program and rent to his sister, Stephens. There is no mention of this unmistakable fact in the Report.

14.     Additionally, there was no reason for Stephens to borrow Kleewein's car, as he claimed. Here, local Department of Motor Vehicles clearly reflect that Stephens used West's 1987 Pontiac STE6000 or 1993 S-10 Chevy Blazer, or both while they resided together. Again, there is no mention of these fact in the Report, or by NECAC. *See* Id. Q4, p.13.

## AMENDED COMPLAINT

Third, this instant correspondence serves as an Amended Physical Disability Complaint for the above-enumerated matter. In support, the following is provided:

1.      Previously, West filed a complaint against NECAC because of the alleged unfair practices by withholding material evidence used in support of adverse agency action in violation of both the Due Process and Equal Protection of the Law Clauses as guaranteed under the Fourteenth Amendment to the United States Constitution.

2.      This unfair practice denies applicants' a reasonable administrative procedure as to make

4

an informed choice of whether to appeal an adverse agency action.

3.  Similarly, it was recently discovered that NECAC conducted a hearing without providing West with any notice or opportunity to attend. *See* Id., Q13, p. 12 ("NECAC concluded that it was not true that Michael West lived with me.")

4.  Moreover, as demonstrated above, West was unfairly denied a meaningful physical disability complaint investigation employed by HUD because several available witnesses were not contacted.

5.  Likewise, as demonstrated above, West was denied a meaningful opportunity to respond to the false, misleading, and untrue material misrepresentations committed by both Stephens and Kleewein in violation of due process, equal protection of law and disability discrimination laws, e.g., 28 CFR Part 35.

6.  West believes this is due to his physical disabilities.

7.  At a minimum, and as demonstrated above, the underlying complaint and/or Final Report of Investigation should be amended to reflect that the fact-finding procedures and investigation process employed by HUD or NECAC, or both, is arbitrary and capricious, or otherwise contrary to law…to say the least.

*****

If I did not make myself clear or you do not understand anything represented above, need further clarification, or have any comments, please do not hesitate to contact me.

Respectfully,

Michael West


Enclosure
As stated